IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

                Plaintiff

     v.

WALTER S. SANDERS,

                Defendant.

REPORT AND
RECOMMENDATION

09-cr-20-bbc
_____

## REPORT

The grand jury has charged defendant Walter S. Sanders with unlawfully failing to update his sex offender registration after traveling from Wisconsin to Mississippi, all in violation of 18 U.S.C. §2250. Sanders has moved to dismiss the indictment on a variety of grounds, *see* dkt. 12, all of which are disputed by the government, *see* dkt. 17. For the reasons stated below, I am recommending that this court deny Sanders's motion to dismiss the indictment.

## Facts

On October 3, 2000, defendant Walter S. Sanders was convicted in Dane County Circuit Court of second degree sexual assault/use of force, in violation of Wis. Stats. §940.225(2)(a). On that same day, state authorities provided Sanders with a sex offender registration form, advising Sanders of his duty to register as a sex offender for life in accordance with Wis. Stat. §301.45. Sanders signed the form that same day acknowledging that he had been notified of his duty to register and stating that he had read the requirements set forth on the form. One of the requirements was that Sanders was subject to registry requirements whether he lived in Wisconsin or some other state or nation. Sanders's original sentence was three years' probation

with a year in jail; on December 12, 2002, the state revoked his probation and imposed a 66-month prison sentence.

On July 27, 2006, the Sex Offender Registration and Notification Act (SORNA) became federal law.  SORNA created a national sex offender registry law and required every state to maintain a sex offender registry conforming to SORNA's stringent requirements.  *See* 42 U.S.C. §16901-16962.  Congress delegated to the Attorney General the decision whether SORNA applied to persons convicted prior to the statute's enactment in 2006, and prior to a state's implementation of the required registry.  On February 28, 2007, the Attorney General determined that SORNA was retroactively applicable to all sex offenders:

> This part specifies the applicability of the requirements of [SORNA] to sex offenders convicted prior to the enactment of that Act.  These requirements include registering and keeping the registration current in each jurisdiction in which a sex offender resides, is an employee, or is a student.  . . .
>
> * * *
>
> The requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act.
>
> Example 1.  A sex offender is federally convicted of aggravated sexual abuse under 18 U.S.C. § 2241 in 1990 and is released following imprisonment in 2007.  The sex offender is subject to the requirements of [SORNA] and could be held criminally liable under 18 U.S.C. § 2250 for failing to register or keep the registration current in any jurisdiction in which the sex offender resides, is an employee or is a student.
>
> Example 2.  A sex offender is convicted by a state jurisdiction in 1997 for molesting a child and is released following imprisonment in 2000.  The sex offender initially registers as required, but disappears after a couple of years and does not register in any other jurisdiction.  Following the enactment of [SORNA], the sex offender is found to be living in another state and is arrested there.  The sex offender has violated the requirement under [SORNA] to

2

register in each state in which he resides, and could be held
criminally liable under 18 U.S.C. § 2250 for the violation because
he traveled in interstate commerce.

28 C.F.R. §§ 72.1 & 72.3

At some point in 2007 Sanders was released from prison and began serving a term of
community supervision.  On March 3, 2007 (probably immediately preceding his release)
Sanders signed another sex offender registration form as required by state statute.  Another
requirement of the state statute was that Sanders notify the Sex Offender Registration Program
(SORP) before leaving the state of Wisconsin.  Sanders's last contact with a Wisconsin
probation officer was a January 28, 2008, in a different case.  It is not clear on this record if his
supervision ended or if Sanders just stopped reporting.  In either event, Sanders did not notify
SORP that he was leaving Wisconsin.

On July 2, 2008, the Attorney General issued final national guidelines for sex offender
registration and notification.  A new office was established to administer the standards for sex
offender registration and notification as set forth in the guidelines.[1]  Among other things,
SORNA imposed on each state the duty to advise sex offenders of their obligations under
SORNA and require each offender to read and sign a form stating that his duty to register under
SORNA had been explained to him and that he understand these registration requirements.  No
government official from either Wisconsin or Mississippi informed Sanders of SORNA's
requirements and no state official had ever presented Sanders with a form detailing SORNA's
registration requirements.

_____

[1]  The Office of Sex Offender Sentencing, Monitoring, Apprehension, Registering, and Tracking
is known as the "SMART" office.

3

On January 20, 2009, Sanders was arrested in Mississippi.  Sanders had neither updated his Wisconsin sex offender registration, nor had he registered as a sex offender in Mississippi as required by that state's law.  *See* §45-33-25(1)(a), Mississippi Code.

To date, neither Wisconsin nor Mississippi has implemented SORNA's requirements; in fact, both states requested and were granted extensions until July 26, 2010 to comply.

### Statutes and Regulations

Title 18 U.S.C. § 2250, as charged in this case against Sanders, provides:

(a) In general–whoever:

(1) is required to register under [SORNA];

* * *

(2)(B) travels in interstate or foreign commerce, . . .; and

(3) knowingly fails to register or update a registration as required by [SORNA]; Shall be fined under this title or imprisoned not more than 10 years, or both.

SORNA, 42 U.S.C. § 16901 *et seq.* defines "sex offender" and "sex offender registry," *see* § 1611((1) and (9), provides for states to maintain a registry and authorizes the Attorney General to issue guidelines and regulations to interpret and implement SORNA, *see* § 16912(a) & (b), imposes upon sex offenders the duty to register and keep their registration current, *see* § 16913, specifies the type of information a sex offender must provide for the registry, *see* § 16914(a) and the type of information the state must include in its registry, *see* § 16914(b), and requires an imprisoned sex offender's custodian to advise the sex offender of his duty to register, *see* § 16917.  If a sex offender fails to comply with SORNA's registry requirements, "an appropriate official" must notify the Attorney General and appropriate law enforcement agencies

4

so that they can "take any appropriate action to ensure compliance." *See* § 16922.  States have

other data-sharing obligations, one of the goals of which is to create a National Sex Offender

Registry managed by the FBI.  *see* §§ 16918-21 and 23,  States are required to implement

SORNA not later than July 27, 2009, with up to two 1-year extensions available; any state that

fails timely to comply with its SORNA obligations has its federal funding  docked in a specified

fashion, *see* §§ 16924-25.

## Analysis

As a brand-new federal statutory scheme that delves deeply into sensitive matters

traditionally handled by the states, SORNA already has provoked myriad constitutional and

statutory challenges in the federal courts.  Many courts have upheld the attacked provisions of

SORNA, a few have found them unconstitutional, and new opinions are issued every week.[2]

Both sides in this case have submitted well-written briefs that thoroughly explore the law

and advocate the cases that advance their respective positions.  The Court of Appeals for the

Seventh Circuit analyzed SORNA in *United States v. Dixon*, 551 F.3d 578 (7th Cir. 2008), and

this case appears to governs Sanders's motion, notwithstanding his dissatisfaction with the

court's terse analysis.  To the extent that the court in *Dixon* has laid down the law on SORNA,

this court is bound to apply it.  *See United States v. Booker*, 115 F.3d 442, 444 (7th Cir. 1997).

_____

[2] The most recent is *United States v. Hernandez*, ___ F.Supp.2d ___, 2009 WL 1396365 (E.D. Mich. May 18,2009) in which the court surveys the cases to uphold SORNA against defendant's seven challenges.

Sanders argues that SORNA does not apply to him because neither Wisconsin nor Mississippi has implemented the law. Congress delegated to the Attorney General the authority to determine whether SORNA applied retroactively to (1) persons convicted before July 27, 2006 (the enactment date of SORNA), and (2) those who were convicted before SORNA was implemented in a particular jurisdiction. According to Sanders, the Attorney General answered the first question but never answered the second. Thus, argues Sanders, no authority exists making SORNA applicable to sex offenders in Wisconsin or Mississippi. To prosecute him for failing to register violates his rights under the due process clause and ex post facto clause.

Sanders acknowledges that the Court of Appeals for the Seventh Circuit held otherwise in *United States v. Dixon*, 551 F.3d 578 (7th Cir. 2008). There, one of the defendants pointed out that Indiana had not yet implemented SORNA, which made it impossible for him to comply with its registration requirements. The court rejected this argument:

> But recall that the Act requires the Attorney General to "specify the applicability of [its] requirements . . . to sex offenders convicted before . . . its implementation in a particular jurisdiction," which the Attorney General did in his regulation of February 28, 2007.

> *Dixon,* 551 F.3d at 582.

Sanders contends that the Seventh Circuit has read the Attorney General's opinion too broadly. He has a point: the Attorney General's February 28, 2007 opinion, quoted above at pp. 2-3, explicitly addresses only the issue whether SORNA applies to sex offenders convicted prior to SORNA's enactment. Even so, it would not be illogical for the court to infer that the Attorney General is assuming in his opinion that SORNA applies to sex offenders prior to state implementation. After all, at in February 2007, no state had yet implemented SORNA, yet the

6

Attorney General expressed no reservation about whether criminal prosecutions could be initiated at that time.

If this is the inference that the Seventh Circuit drew in *Dixon*, it was correct: on July 2, 2008 the Attorney General addressed the state implementation question directly when he issued final guidelines interpreting and implementing SORNA:

> C. Retroactivity
>
> The applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program. Rather, SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders, including those whose convictions predate SORNA's enactment. *See* 28 CFR 72.3.
>
> 73 FR 38030-01, 38046.

Also:

> As discussed in Part II.C. of these Guidelines, SORNA applies to all sex offenders, including those convicted of their registration offenses prior to the enactment of SORNA or prior to particular jurisdictions' incorporation of the SORNA requirements into their programs.
>
> *Id.* at 38063.

Courts that have directly addressed this issue have found that SORNA applies to sex offenders convicted prior to particular jurisdictions' implementation of SORNA. *See, e.g., United States v. Hernandez*, 2009 WL 1396365 at * 4; *United States v. Benton*, 2008 WL 5273971 at *6 (S.D. Ohio Dec. 16 2008); *United States v. Ditomasso*, 552 F. Supp.2d 233, 239 (D.R.I. 2008). The fact that neither Wisconsin nor Mississippi has yet implemented SORNA is not a basis to dismiss the criminal charge against Sanders. Sanders was a "sex offender" under SORNA and

as of July 27, 2006, he was required to–and capable of–registering and keeping his registration current in the jurisdiction in which he resided: Wisconsin and Mississippi both had registration processes Sanders could have employed in order to comply with § 16913(a) prior to either state's implementation of SORNA.

Sanders' ex post facto argument fails for similar reasons.  The ex post facto clause would protect Sanders only if all the acts required for criminal punishment occurred before § 2250 took effect.  If any act took place later, the clause does not apply. *Dixon*, 551 F.3d at 584-85. As just noted, Sanders was and is obliged to register as a sex offender under SORNA and  he had a reasonable opportunity to do so after enactment of the statute.  Indeed, when he left prison, Sanders *was* properly registered under Wisconsin law, as required by SORNA.  Not quite a year later (and about 2½ years after enactment of SORNA), Sanders is alleged to have traveled interstate and then knowingly failed to update his registration.  The ex post facto clause has no application to his situation.

Next, Sanders argues that Congress lacks power under the Commerce Clause to require individuals convicted of purely local sex offenses to register as sex offenders.  According to Sanders, the predicate element of a §2250 violation, that the defendant be "required to register under [SORNA]," imposes a federal requirement on a purely local offense.  Therefore, Congress cannot constitutionally require Sanders to register under SORNA.  Sanders then argues that the interstate travel element in §2250 does not suffice because it does not require that the travel be with intent to violate the statute.

As the government notes, in *Dixon,* the Seventh Circuit deemed the Commerce Clause argument "meritless" and squooshed it in two short sentences.  551 F.3d at 583.  Thus there is

no need for this court to dwell on this by addressing all of the myriad arguments and analyses offered in other federal districts and circuits on the Commerce Clause or the corollary Necessary and Proper Clause.  Sanders is concerned that SORNA's registration requirement, 42 U.S.C. § 16913 is an unconstitutional federal intrusion into matters that have no nexus to interstate commerce.  At least two appellate courts have considered this argument and rejected it on the ground that registration is a necessary and proper predicate to tracking the interstate movement of sex offenders. *See United States v. Ambert*, 561 F.3d 1202,1211 (11th Cir. 2009)  *United States v. Howell*, 552 F.3d 709, 715-17 (8th Cir. 2009). To the extent that Congress has a legitimate interest in tracking the interstate movement of sex offenders, it does have the power to create a statutory framework that would allow such tracking to occur.  *See Ambert*, 561 F.3d at 1211-12.  Section 16913 is regulatory rather than punitive, *see Dixon*, 551 F.3d at 584; even Congress realized that a sex offender's mere failure to register, without more, would have to be prosecuted by the states.  *See* § 16913(3).

Sanders sees this as the tail wagging the dog and cites decisions from outside this circuit that support his position. *See* Reply Brief, dkt. 18, at 5-6.  Sanders's professed concern over the breadth and depth of SORNA raises legitimate questions about the appropriate limits of federal police power, not just with regard to sex offenders but more generally.  The actual question before this court, however, is narrower: does § 2250–and § 16913 when used as an element of § 2250–exceed Congress's power under the Commerce Clause to criminalize the conduct charged against Sanders?  The answer, according to *Dixon*, is No.

Finally, Sanders argues that SORNA is invalid because it violates the  Non-Delegation doctrine.  According to Sanders, Congress violated Art. I, §§ 1 & 8 of the United States

9

Constitution by delegating to the Attorney General the authority to determine the retroactivity of SORNA and to "prescribe rules of the notification of sex offenders who cannot be registered in accordance with subsection (a)," *see* 42 U.S.C. § 16917(b).  As the government points out, the Seventh Circuit quickly disposed of this argument in *Dixon*:

> Likewise without merit is [defendant's] argument that for Congress to delegate to an official of the executive branch the authority to fill out the contours of a statute violates the separation of powers. It is commonplace and constitutional for Congress to delegate to executive agencies the fleshing out of criminal statutes by means of regulations. *See. E.g. Touby v. United States*, 500 U.S. 160, 165-69 (1991).

> *Dixon*, 551 F.3d at 583-84.

In his reply brief, Sanders acknowledges this holding (as well as *Dixon*'s unfavorable rulings on his Due Process and ex post facto clause arguments) and reports that his intent is simply to preserve these issues in the event the Supreme Court holds otherwise when it considers SORNA. *See* dkt. 18 at 2-3.  Duly noted.  It would have been better practice for Sanders to have fronted all of these concessions  in his opening brief, but who likes to lead with his chin?

The bottom line is that circuit law dooms Sanders's motion to dismiss.  Perhaps the Supreme Court will strike down SORNA as a well-intentioned but insidious federal infiltration of traditional state police power.  Any sort of national criminal registry administered by the FBI in Washington is a legitimate cause for concern and deserves careful scrutiny.  But Congress, the Attorney General and the Seventh Circuit have placed their imprimatur on SORNA, the stated goals of which are meritorious.  Accordingly, the § 2250 prosecution against Sanders may proceed.

RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court deny defendant Walter S. Sanders's motion to dismiss the indictment against him.

Entered this 29th  day of May, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin  53701

Chambers of
STEPHEN L. CROCKER
U.S. Magistrate Judge

Telephone
(608) 264-5153

May 29, 2009

Laura Przybylinski Finn
Assistant U.S. Attorney
P.O. Box 1585
Madison, WI 53701-1585

Kelly A. Welsh
Federal Defender Services of Wisconsin, Inc.
222 West Washington Ave., Ste. 300
Madison, WI 53703

Re:___United States v. Walter S. Sanders
Case No. 09-cr-20-bbc

Dear Counsel:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the newly-updated memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before June 8, 2009, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by June 8, 2009, the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,

/s/

Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc:    Honorable Barbara B. Crabb, District Judge

12

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the  full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

>     (1) injunctive relief;
>
>     (2) judgment on the pleadings;
>
>     (3) summary judgment;
>
>     (4) to dismiss or quash an indictment or information;
>
>     (5) to suppress evidence in a criminal case;
>
>     (6) to dismiss or to permit maintenance of a class action;
>
>     (7) to dismiss for failure to state a claim upon which relief can be granted;
>
>     (8) to dismiss actions involuntarily; and
>
>     (9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation.  Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth with particularity the bases for these objections.  An objecting party shall serve and file a copy

of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection.  Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects.  The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection.  The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions.  The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.  *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).**